**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. EC-11-1258-JuKiD |
| BERENICE AND PIERRE THOREAU DE LA SALLE, | Bk. No. 10-29678 |
| Debtors. | |
| BERENICE AND PIERRE THOREAU DE LA SALLE, | |
| Appellants, | |
| v. | **O P I N I O N** |
| U.S. BANK, N.A. AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST, MORTGAGE LOAN PASS-THROUGH CERTIFICATES SERIES 2005-19XS, | |
| Appellee. | |

Submitted on November 16, 2011
at Sacramento, California

Filed - December 12, 2011

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Ronald H. Sargis, Bankruptcy Judge, Presiding

Appearances: George Gingo, Esq., argued for Appellants, Berenice and Pierre Thoreau de la Salle; Robert J. Esposito, Esq., argued for appellee, U.S. Bank, as Trustee for the Certificateholders of Structured Adjustable Rate Mortgage Loan Trust, Mortgage Loan Pass-Through Certificates Series 2005-19XS.

_____

Before: JURY, KIRSCHER, and DUNN, Bankruptcy Judges.

JURY, Bankruptcy Judge:

Appellants, chapter 7[1] debtors Berenice and Pierre Thoreau de la Salle, appeal the bankruptcy court's orders (1) denying confirmation of their second amended chapter 13 plan and (2) granting the motion of appellee, U.S. Bank, N.A., as Trustee for the Certificateholders of Structured Adjustable Rate Mortgage Loan Trust, Mortgage Loan Pass-Through Certificates Series 2005-19XS ("U.S. Bank") to convert their chapter 13 case to one under chapter 7. We AFFIRM.

## I. FACTS

The orders on appeal relate to debtors' lengthy dispute with numerous parties, including U.S. Bank, regarding the identity of the entity legally authorized and entitled to enforce the note and deed of trust against debtors' real property and the validity of the deed of trust itself.

In 2005, Berenice de la Salle signed a note in conjunction with a loan for $668,000 obtained from Countrywide Homes Loans, Inc., dba America's Wholesale Lender ("Countrywide"). The note was secured by a deed of trust on debtors' residence located in Mammoth Lakes, California. In late 2008, she defaulted on the note, a notice of default was recorded and the trustee's sale was scheduled for March 25, 2010. By then, she owed more than $29,000 in arrears and approximately $840,000 on the note.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

After Ms. de la Salle defaulted, but before the trustee's sale, she filed a complaint in the Eastern District of California against Countrywide and others, seeking to invalidate the security interest on her property based on various theories. The defendants moved to dismiss the action, which the district court granted by judgment entered on June 30, 2010. Ms. de la Salle appealed that decision to the Ninth Circuit. The appeal was dismissed due to her failure to prosecute and her request for a voluntary dismissal.

On April 15, 2010, two days after the district court announced its decision orally, debtors filed their chapter 13 petition pro se. They then mounted a multifaceted attack on U.S. Bank's "standing" to foreclose on their residence.

Debtors' original Schedule D acknowledged that U.S. Bank held a secured claim on their property. However, their Schedule F also listed U.S. Bank with a disputed unsecured claim in an undisclosed amount. Debtors later listed the full amount of U.S. Bank's debt as unsecured in an amended Schedule F, claiming that there were three possible creditors who could enforce the note and deed of trust and that by listing the debt as unsecured, the true creditor would eventually come forward. That amendment put their unsecured debt at $1,116,910, which was over the jurisdictional limits for unsecured debt in a chapter 13 under § 109(e).

Meanwhile, debtors attempted to get their chapter 13 plan confirmed. Despite acknowledging that a secured debt existed against their residence, albeit disputed, none of debtors' plans provided for the payment of arrears or maintenance payments to

-3-

their secured creditor.[2] The first plan, filed on April 29, 2010, placed U.S. Bank in Class 2,[3] but provided for no monthly payment. Debtors stated in ¶ 7.03 of an attachment to the plan that they believed the entire debt secured by the first deed of trust on their property was paid off by credit enhancements in the form of credit default swaps at the time that Ms. de la Salle defaulted.

Before any confirmation hearing was held, debtors filed a "motion" to confirm an amended plan on May 27, 2010. In the amended plan, debtors still included U.S. Bank in Class 2, but amended ¶ 7.03 to state that they did not know who was the owner of the note U.S. Bank sought to enforce. As a result, they took the position that the entire amount of $862,462.33 owed on the debt was unsecured. The chapter 13 trustee objected to the plan on the grounds, among others, that debtors' plan attempted to modify a debt secured by their residence in violation of § 1322(b) and that they were not making current payments on their mortgage debt. On July 16, 2010, the court denied confirmation of the amended plan, without prejudice, because of inadequate service on the Internal Revenue Service.

Debtors filed and moved to confirm a second amended plan on

---

[2] Debtors also had an equity line of credit for $218,000 secured by a second deed of trust on their property. OneWest Bank filed a proof of claim relating to this debt which debtors objected to. The bankruptcy court later sustained their objection finding that OneWest Bank's claim was unsecured.

[3] The chapter 13 plan form for the Eastern District of California (EDC3-080) designates Class 2 claims as "Secured claims that are modified by the plan, or that have matured or will mature before the plan is completed."

August 9, 2010. In this plan, debtors deleted U.S. Bank from Class 2 entirely and "clarified" that they would file a proof of claim on behalf of the "purported" creditor, U.S. Bank, and object to its claim. They also stated that they were in the process of filing an adversary proceeding against U.S. Bank.

U.S. Bank objected to debtors' second amended plan on the grounds that (1) the plan did not provide for payment of the arrears or ongoing mortgage payments and (2) was not feasible given that debtors' net monthly income of $1081 was insufficient to make the monthly payments to U.S. Bank, which alone were $6,423.77 per month. The chapter 13 trustee also objected to debtors' second amended plan essentially on the same grounds. As further discussed below, the court later sustained these objections to the second amended plan at a March 29, 2011 hearing.

**A.    Debtors' Objection To U.S. Bank's Proof Of Claim**

U.S. Bank filed a timely proof of claim (claim no. 17), asserting a secured claim of $828,710.32.[4] On September 1, 2010, debtors objected to the claim, arguing that the bank had not met its threshold burden of standing because the proof of claim was not accompanied by evidence that it had authority to bring the claim.

At an October 19, 2010 status conference on debtors'

---

[4] U.S. Bank later filed an amended proof of claim (claim no. 18). In that claim, U.S. Bank alleged that Mortgage Electronic Registration Systems, Inc. ("MERS") - as "nominee" for America's Wholesale Lender, in whose name the deed of trust had been recorded - had assigned the deed of trust to U.S. Bank. The MERS assignment was executed five days after the claims bar date.

objection to U.S. Bank's claim, the bankruptcy court told Ms. de la Salle:

> And one of the things I tell debtors, who get very excited about the standing issue, is, we can go ahead and have hearings and bring people in, but first, last, and foremost, if there's a deed of trust securing the loan on the property, whether you have the creditor, the right creditor or the wrong creditor in here, any plan, you are going to deal with the secured claim, and any objection -- any objection to claim now doesn't necessarily take care of that lien.

Hr'g Tr. (October 19, 2010) at 5.

**B.    Debtors' Adversary Proceeding Against U.S. Bank**

On October 12, 2010, prior to the hearing on their claim objection, debtors filed an adversary proceeding (Adv. No. 10-02642-E) against U.S. Bank, Lehman Brothers Holdings, Inc. ("Lehman"), Countrywide and MERS. The complaint sought a declaration that the trust deed was defective and to quiet title against the various defendants. The defendants moved to dismiss the adversary proceeding on res judicata grounds because debtors' complaint raised many of the same issues that were raised or could have been raised in the district court action. The bankruptcy court granted that motion and dismissed all claims with prejudice against defendants Lehman, Countrywide and MERS by order entered on March 4, 2011.

However, the bankruptcy court allowed debtors to proceed against U.S. Bank. The court reasoned that the issues of whether the deed of trust was unperfected and whether U.S. Bank had standing to enforce the note could not have been raised in the district court action.

At a November 30, 2010 hearing, the bankruptcy court indicated that it would administratively consolidate debtors'

-6-

objection to U.S. Bank's proof of claim with the adversary proceeding because the issues were intertwined.[5]

On April 15, 2011, debtors filed a motion for summary judgment on their objection to U.S. Bank's proof of claim and motion for partial summary judgment in the adversary case.[6] The hearings were scheduled for May 26, 2011.

## C.   U.S. Bank's Motion To Dismiss Or Convert Debtors' Case

In late December 2010, U.S. Bank filed separate motions to dismiss or convert debtors' bankruptcy case under § 1307(c) on the grounds that (1) debtors had made no postpetition payments on its secured claim and (2) they were ineligible for chapter 13 relief because their debts exceeded the unsecured debt limit prescribed by § 109(e) due to debtors' listing of U.S. Bank's debt as unsecured.

At the January 18, 2011 hearing on the motions, the bankruptcy judge expressed his view on the record regarding chapter 13 debtors who sought to confirm plans that did not provide for payments on their residence:

---

[5] At this hearing, the court commented in passing that since debtors did not know which entity could enforce their note perhaps Governor Jerry Brown would like to get the money. Debtors afterwards took the position that if they owed the money at all, the money escheated to the State of California, and they could pay a lesser amount than owed on the note. They went so far as to file a creditor's claim on behalf of the State of California as holder of a secured claim on their property by reason of escheat, in the amount of $668,000.

[6] The record contains voluminous materials on the summary judgment motions which have never been ruled on. Presumably debtors included this material in the record to show that they would succeed with their litigation against U.S. Bank due to the overwhelming evidence they have against it. The motions for summary judgment are irrelevant to this appeal.

-7-

> I say, go to state court, sue, get your preliminary injunction, because you are not telling me about a bankruptcy plan. You're telling me we are filing bankruptcy to get a free injunction while we proceed with the litigation.

Hr'g Tr. (January 18, 2011) at 7. However, the bankruptcy court denied U.S. Bank's first round of motions on procedural grounds (U.S. Bank had failed to serve creditors) by order entered on January 25, 2011.

In February 2011, U.S. Bank filed its second round of motions to dismiss or convert debtors' case, asserting the same grounds as its prior motions. Debtors filed a response on March 15, 2011, alleging that U.S. Bank was neither a secured nor unsecured creditor in their case, that it filed a fraudulent proof of claim in their case, and that it committed a fraud on the court by pretending to be a bona fide creditor. They further asserted that it would violate § 1322(b)(1) to make payments to U.S. Bank because such payments would discriminate unfairly against bona fide creditors. In addition, debtors maintained that U.S. Bank failed to prove that it was a party in interest with standing to be heard by the court as there was no evidence that it was the holder of the secured claim on their property. Finally, debtors stated that if they were not eligible for chapter 13, they would convert their case to one under chapter 11.

**D.  The March 29, 2011 Hearing**

On March 29, 2011, the bankruptcy court heard (1) U.S. Bank's motions to dismiss or convert debtors' case; (2) debtors' motion to confirm their second amended plan; and (3)

the continued status conferences on debtors' objection to U.S. Bank's proof of claim and their adversary proceeding.

The court, sustaining U.S. Bank's and the chapter 13 trustee's objections to debtors' second amended plan, denied confirmation of the plan finding that: (1) the plan failed to provide for payment of the note securing debtors' residence in violation of § 1325(a)(5), and (2) until debtors prevailed on their theory that the secured claim escheated to the State of California, there was no reason for the court to believe that U.S. Bank did not hold the first deed of trust for this claim. See Civil Minutes dated March 29, 2011, Dkt. No. 210.

However, because debtors had newly retained counsel, the court continued the bank's motions to dismiss or convert to May 3, 2011, to afford debtors one final opportunity to file an amended, confirmable chapter 13 plan. In its Civil Minutes, the court gave detailed instructions to debtors and their counsel:

> On or before April 15, 2011, the debtors shall file a third amended plan and/or make provisions to make mortgage payments to a blocked account . . . . This includes making provision for curing all pre and postpetition arrearages as permitted by the Bankruptcy Code.

Finally, because debtors' adversary proceeding and claim objection raised essentially the same issues, the bankruptcy court consolidated the matters for all hearings, scheduling deadlines, and discovery, by order entered on April 4, 2011.[7]

---

[7] This order confirmed the oral ruling of the court on November 30, 2010.

-9-

**E.    The May 3, 2011 Hearing**

Debtors and their counsel failed to submit a third amended plan by April 15, 2011, or any time thereafter. As a result, at the May 3, 2011 hearing, the bankruptcy court granted U.S. Bank's motion to convert debtors' case.

In its written decision, the court first noted that it had previously warned debtors that they would have to propose a confirmable plan and that until their argument that the claim securing their residence escheated to the State of California was adjudicated, they should make the payments on the disputed note into a blocked account.

The court further found that debtors' reorganization was a sham because they had never provided for payment on the secured claim against their residence while they obtained the benefits of the automatic stay in lieu of a Civil Rule 65 injunction. In addition, the court determined that U.S. Bank had standing to participate in the case and assert its position and rights with respect to its claim despite debtors' objection to the bank's proof of claim and adversary proceeding against it.

Finally, the court found cause existed to dismiss or convert debtors' case on independent grounds: (1) unreasonable delay by debtors that was prejudicial to creditors; (2) failure to file a plan timely; (3) failure to commence making payments under a plan proposed in good faith, and (4) failure to propose a plan or prosecute a reorganization in good faith. The court decided that it was in the best interests of the creditors and the estate to convert the case; i.e., if debtors' contention was

true that their property was free and clear of all liens, then those monies could be made available to the unsecured creditors in the case.

The court's decision was without prejudice to the pending adversary proceeding and debtors' objection to U.S. Bank's claim.[8] The court entered its order converting the case on May 9, 2011.

**F.      Denial Of Debtors' Motion For Stay Pending Appeal And Request For Judicial Notice**

Debtors timely appealed the orders denying confirmation of their second amended plan and converting their case.[9] Debtors moved for a stay pending appeal which was denied by the bankruptcy court and this Panel.

Debtors request us to take judicial notice of the bankruptcy court's memorandum decision denying their request for a stay pending appeal in their reply brief. They contend such notice is appropriate because the court's decision clarifies the court's reasons for ordering the conversion of their case. We deny debtors' request for judicial notice because they seek to use the court's decision to establish the accuracy of the facts within to support their position in this appeal; i.e., that the

---

[8]    The court observed that the chapter 7 trustee would have standing as plaintiff in the adversary proceeding.

[9]    Debtors' Notice of Appeal also includes the order that administratively consolidated debtors' claim objection and adversary proceeding against U.S. Bank and numerous minute orders scheduling and rescheduling the hearings on those consolidated matters.

-11-

court did not act sua sponte in converting debtors' case, but simply ruled on U.S. Bank's motion to convert and U.S. Bank did not have standing to bring that motion. Debtors' request goes beyond the proper use of judicial notice for purposes of this appeal.

## II.  JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(B), (K) and (L).  We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

A.   Whether the bankruptcy court abused its discretion in denying confirmation of debtors' second amended plan;

B.   Whether U.S. Bank was a party in interest with standing to seek dismissal or conversion of debtors' bankruptcy case under § 1307(c); and

C.   Whether the bankruptcy court erred in converting debtors' bankruptcy case from chapter 13 to one under chapter 7.

## IV.  STANDARDS OF REVIEW

The proper interpretations of statutes and rules are legal questions that we review de novo.  Heath v. Am. Express Travel Related Servs. Co. (In re Heath), 331 B.R. 424, 428 (9th Cir. BAP 2005).  Whether compliance with a given statute or rule has been established is generally a question of fact, which we review for clear error.  Id.

We review the bankruptcy court's ultimate decision to confirm or not to confirm a reorganization plan for an abuse of discretion.  Computer Task Grp., Inc. v. Brotby (In re Brotby),

-12-

303 B.R. 177, 184 (9th Cir. BAP 2003).

We review the issue of standing de novo. Brown v. Sobczak (In re Sobczak), 369 B.R. 512, 516 (9th Cir. BAP 2007).

We review a decision to dismiss or convert a chapter 13 case under § 1307(c) for abuse of discretion. Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth), 455 B.R. 904, 914 (9th Cir. BAP 2011).

> In applying our abuse of discretion test, we first 'determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested.' If the bankruptcy court identified the correct legal rule, we then determine whether its 'application of the correct legal standard [to the facts] was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.' If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion.

USAA Fed. Sav. Bank. v. Thacker (In re Taylor), 599 F.3d 880, 887-88 (9th Cir. 2010) (citing United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc)).

We review the bankruptcy court's factual findings regarding debtors' lack of good faith for clear error. In re Ellsworth, 455 B.R. at 914.

We may affirm on any ground supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

## V. DISCUSSION

As we understand debtors' arguments on appeal:

(1) by placing a claim at issue through an objection or

-13-

adversary proceeding and by keeping current on the plan payment they proposed (in this case $1079), they need not make current payments to U.S. Bank nor provide for its claim in their plan, pending the outcome of the claim dispute;

(2) the bankruptcy court denied them a hearing on the claim dispute and thus they were prejudiced by the premature conversion of their case; and

(3) their claim objection, coupled with their overwhelming evidentiary showing that U.S. Bank did not have standing to enforce the note against their residence, caused the bank to lose its standing for all purposes to participate in their case.

We address each contention below.

**A.    The Bankruptcy Court Did Not Err In Denying Confirmation of Debtors' Second Amended Plan**

We are not persuaded by debtors' argument that their objection to U.S. Bank's proof of claim authorized them to suspend all payments to their secured creditor and ignore its claim in their chapter 13 plan.  To support their argument, debtors cite to various statutes and Rules that pertain to the claim objection and allowance process which are different from the statutes and Rules that govern confirmation of chapter 13 plans.  While debtors had the right to object to U.S. Bank's proof of claim, the notice and hearing procedures for the objection were statutorily mandated by § 502(b).[10]  These

---

[10]    Section 502(b) provides that if an objection "to a claim is made, the court, after notice and a hearing, shall determine (continued...)

-14-

procedures, which are separate and apart from the plan confirmation process, do not authorize debtors to change the amount or reclassify a debt in their chapter 13 plan which was set forth in a properly filed proof of claim.

The language in the chapter 13 plan form required to be used in the Eastern District of California is consistent with the statutes and Rules governing claims and their treatment in chapter 13 plans. Section 3.04 of the plan form (EDC3-080) states:

> The proof of claim, not this plan or the schedules, shall determine the amount and classification of a claim. If a claim is provided for by this plan and a proof of claim is filed, dividends shall be paid based upon the proof of claim unless the granting of a valuation or lien avoidance motion, or the sustaining of a claim objection, affects the amount or classification of the claim.

Accordingly, despite debtors' claim objection and pending adversary proceeding against U.S. Bank, as long as debtors proposed a plan which provided for the bank's proof of claim as filed, confirmation of their plan could have occurred.[11]

But none of debtors' plans provided for the payment of U.S. Bank's secured claim. Putting U.S. Bank's proof of claim aside, § 1322(b)(2) specifically prohibits debtors from modifying claims which are secured by their principal residence. Moreover, § 1325(a)(5) requires debtors to provide for the

---

[10] (...continued)
the amount of such claim . . . ."

[11] Indeed, debtors' position would invite strategic litigation to avoid making payments under a chapter 13 plan.

payment of their secured claims in an amount equal to the claim. The record shows that debtors did not have the income to provide for the payment of U.S. Bank's claim. Accordingly, we conclude that the bankruptcy court properly denied confirmation of their second amended plan.

**B.** **The Bankruptcy Court Did Not Prejudice Debtors By Converting Their Case Prior To Resolving Their Objection To U.S. Bank's Proof Of Claim**

We also find no merit to debtors' contention that they were prejudiced by the conversion of their case prior to the resolution of their objection to U.S. Bank's proof of claim. There is no deadline in a statute or Rule for hearing claim objections. Actually, imposing such a deadline creates difficulties in the plan confirmation process and is inconsistent with other deadlines established in the Code. An accelerated process contemplates the confirmation of a chapter 13 plan and commencement of payments prior to the claims bar date or the final allowance of claims.[12] See §§ 1324 and 1326(a), Rules 3002(c) and 3015.[13] Indeed, bankruptcy courts are

---

[12] We recognize that some districts — and even selected judges in a district — do not confirm a chapter 13 plan until after the bar date.

[13] Section 1324(b) states that the hearing on confirmation of the plan may be held no earlier than twenty days and not later than forty-five days after the date of the meeting of creditors under § 341(a). Section 1326(a)(1) requires a debtor to commence making payments not later than thirty days after the date of the filing of the plan or the order for relief, and subsection (2) of that provision states that the trustee shall distribute those payments when the plan is confirmed.
Rule 3002(c) states that in a chapter 13 case, a proof of
(continued...)

-16-

authorized to go forward with confirmation, for the benefit of the debtor and other creditors, even when final liquidation of a claim of a particular creditor is impossible, by allowing the estimation of claims.[14] § 502(c). The key rationale for this procedure is to allow creditors to be paid sooner, as the chapter 13 trustee cannot make distributions until a plan is confirmed. § 1326(a)(2).

Further, as stated above, confirmation of a plan is not a determination of the amount of any allowed secured claim. The form plan in the Eastern District of California expressly provides that the amount of the secured claim, absent separate court determination, is the amount stated as secured in the proof of claim.

In addition, even if we were convinced that prejudice could arise due to delay — which we are not — the record shows that any alleged delay in the resolution of debtors' claim objection was due to their decision to file an adversary proceeding against U.S. Bank prior to the hearing on their claim objection. After debtors filed their adversary proceeding, the bankruptcy

---

[13](...continued) claim is timely filed if it is filed not later than ninety days after the first date set for the meeting of creditors under § 341(a). Rule 3015 requires a debtor to file a plan within fourteen days after the petition is filed and that time cannot be extended unless the court so directs.

[14] Debtors argue in their appeal brief that the court did not have to estimate U.S. Bank's claim because it was liquidated and not contingent. In that event, all debtors had to do was provide for payment of the secured claim in their plan, which they did not do.

-17-

court consolidated the matters for purposes of hearings and discovery because of the similar issues involved. Civil Rule 42(a), which is made applicable to bankruptcy proceedings by Rule 7042, allows the court to consolidate various actions pending before it which "involve[ ] a common question of law or fact . . . ." The opportunity for consolidation is designed to promote not only judicial economy, <u>Johnson v. Manhattan Ry. Co.</u>, 289 U.S. 479, 496-97 (1973), but also the expeditious and efficient conduct of litigation for all concerned. Consolidation is within the broad discretion of the bankruptcy court and trial courts may consolidate cases sua sponte. <u>Burchinal v. Cent. Wash. Bank (In re Adams Apple Inc.)</u>, 829 F.2d 1484, 1487 (9th Cir. 1987); <u>See also</u> <u>Boone v. Derham-Burk (In re Eliapo)</u>, 298 B.R. 392, 405 (9th Cir. BAP 2003) (bankruptcy courts have wide discretion to manage their dockets).

Here, debtors' objection to U.S. Bank's proof of claim and adversary proceeding were in the same procedural posture, there were common issues of law and fact, and the parties were the same. Under these circumstances, we discern no prejudice to debtors.

Finally, although not required, the court made a reasonable accommodation to allow debtors to place the payments owed to their secured creditor in a blocked account pending the outcome of the dispute so that payments would not be made to the wrong

party. Debtors chose simply not to comply.[15]

In sum, on this record we perceive no procedural error or infringement on debtors' substantive rights.

**C.    U.S. Bank Was A Party In Interest With Standing Despite Debtors' Objection To Its Proof Of Claim And Pending Adversary Proceeding**

Debtors' objection to U.S. Bank's proof of claim or pending adversary proceeding did not cause the bank to lose its party in interest standing to participate in debtors' bankruptcy case.

Debtors cite Warth v. Seldin, 422 U.S. 490, 495 (1975), in their appeal brief for the proposition that standing is a threshold issue in every federal case, determining the power of the court to entertain the suit. Debtors misapply this precedent. In Warth v. Seldin, the Supreme Court explained that "standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." 422 U.S. at 498. "A federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.'" Id. at 499.

The "threshold standing" inquiry in Warth v. Seldin has no application in this context. Debtors do not contend the bankruptcy court lacked jurisdiction or that debtors themselves lacked standing to file their petition or seek confirmation of

---

[15]    On April 19, 2011, debtors deposited $1,000 into their attorney's trust account. This payment was allegedly made pursuant to the court's directive that money be deposited into a blocked account in order to pay for the interest on the note.

-19-

their proposed plan.  Instead, debtors argue that U.S. Bank did not have standing to enforce its secured claim against debtors' residence.  The requirement for standing in that instance is irrelevant to this appeal.  Perhaps if the bankruptcy court had overruled debtors' objection to the proof of claim or had confirmed a plan requiring payment of claims to the improper party without considering debtors' arguments about U.S. Bank's lack of standing, then debtors' argument might have merit.  But the bankruptcy court did not rule on the claim nor did it require payment to an improper party, it simply converted debtors' case.

Furthermore, a creditor does not need an allowed claim to be a party in interest for purposes of § 1307(c).  Under that section, a court may convert a chapter 13 case to a chapter 7 for cause on request of a party in interest and after notice and a hearing.  In applying a parallel statute in the chapter 11 context, this Panel held that creditors are parties in interest and may move for the conversion or dismissal of a case under § 1112(b) whether or not their claims have been allowed.  <u>See Johnston v. JEM Dev. Co. (In re Johnston)</u>, 149 B.R. 158, 161 (9th Cir. BAP 1992); <u>see also</u> <u>Martinez v. Arce (In re Torres Martinez)</u>, 397 B.R. 158, 164 (1st Cir. BAP 2008) (same).  The holding in <u>In re Johnston</u> reinforces the notion that the claim allowance process does not control a party in interest inquiry.

Because the statutory language of § 1112(b)[16] is almost identical to that in § 1307(c) — both giving parties in interest the right to seek conversion or dismissal of a bankruptcy case for "cause" — we discern no reason why creditors should not be included within the scope of a party in interest for purposes of § 1307(c).

A statutory analysis supports this view. Under § 101(10)(A), a creditor is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." Section 101(5)(A) defines a "claim" as a "right to payment, whether or not such right is . . . disputed . . . ." Under these statutory definitions, U.S. Bank was a creditor under § 101(10)(A) because it was the holder of a right to payment. "This right, although in dispute, is nevertheless a claim." In re Johnston, 149 B.R. at 161. Therefore, as a "creditor," U.S. Bank had party in interest standing to request the conversion or dismissal of debtors' case.

**D.   The Bankruptcy Court Did Not Err In Converting Debtors' Bankruptcy Case**

Section 1307(c) sets forth a non-exclusive list of factors which constitute "cause" for conversion or dismissal, including unreasonable delay by the debtor that is prejudicial to

---

[16]   This section provides in relevant part that "on request of a party in interest, and after notice and a hearing, the court shall convert . . . or dismiss a case under this chapter, which ever is in the best interests of creditors and the estate, for cause . . . ."

creditors and failure to file a plan timely. § 1307(c)(1) and (3). Moreover, a lack of good faith constitutes "cause" to dismiss a chapter 13 case. Eisen v. Curry (In re Eisen), 14 F.3d 469, 470 (9th Cir. 1994) (per curiam); In re Ellsworth, 455 B.R. at 919.

Section 1307(c) establishes a two-step analysis for dealing with questions of conversion and dismissal. "First, it must be determined that there is 'cause' to act. Second, once a determination of 'cause' has been made, a choice must be made between conversion and dismissal based on the 'best interests of the creditors and the estate.'" Nelson v. Meyer (In re Nelson), 343 B.R. 671, 675 (9th Cir. BAP 2006).

**Cause**

"A debtor's unjustified failure to expeditiously accomplish any task required either to propose or confirm a chapter 13 plan may constitute cause for dismissal under § 1307(c)(1)." In re Ellsworth, 455 B.R. at 915. Here, after denying confirmation of their second amended plan, the court gave debtors detailed instructions and a final opportunity to propose a confirmable plan by April 15, 2011. However, debtors chose to do nothing. More than a year after debtors filed their petition, they still had not confirmed a chapter 13 plan. Given the passage of time and debtors' repeated failure to provide for the claim secured by their residence in their plan, the bankruptcy court correctly concluded that conversion of debtors' case was warranted on account of the resultant delay and prejudice.

Moreover, the record shows that debtors failed to file a plan timely under § 1321. Section 1321 provides that the debtor

-22-

shall file a plan and Rule 3015 states that the deadline for filing the plan is fourteen days after the filing of the petition or within another deadline ordered by the court. This provision "applies not only to the first plan filed, but also to any subsequent plan or modification required by the court." In re Ellsworth, 455 B.R. at 916. Here, the court ordered debtors to file a third amended plan by April 15, 2011 with provisions that provided for payment to their secured creditor. Debtors failed to comply with that order. Thus, the bankruptcy court did not err by converting debtors' case for cause under § 1307(c)(3).

Finally, "[t]o determine bad faith a bankruptcy judge must review the 'totality of the circumstances.' A judge should ask whether the debtor 'misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner." In re Eisen, 14 F.3d at 470. The record shows that the bankruptcy court considered the totality of the circumstances in deciding that debtors failed to propose their plan and prosecute their case in good faith.

The record indicates that debtors enjoyed the protection of the automatic stay for over a year while making zero payments to their secured creditor; none of debtors' plans complied with the Code by providing for the payment of their secured creditor's claims; and debtors' primary activity in their bankruptcy was the continuing litigation of U.S. Bank's claims. Furthermore, after debtors and their counsel received detailed instructions from the bankruptcy court to include payments for their secured

-23-

creditor in their third amended plan, they ignored those instructions by choosing not to file a third amended plan. Under the totality of circumstances approach, we conclude the bankruptcy court did not err in converting debtors' case based on their lack of good faith.

**Best Interests Of Creditors And The Estate**

At the hearing on U.S. Bank's motions to dismiss or convert, U.S. Bank argued for the dismissal of debtors' case. However, the U.S. Trustee suggested conversion because he had discerned that there was some nonexempt cash which could be used by the chapter 7 trustee to determine if there was any real value in the real property or debtors' adversary proceeding. Since the U.S. Trustee made a showing that there might be a recovery that would enhance the value of the estate for unsecured creditors, we conclude the bankruptcy court properly determined that conversion was in the best interests of the creditors and the estate.

## VI.   CONCLUSION

For the reasons stated, we AFFIRM.