NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>YOSHIHIRO TAJIMA and TOMOKO NAKAJIMA,<br><br>               Debtors. | BAP No. CC-21-1249-TLG<br><br>Bk. No. 2:21-bk-14177-SK |
| SWARNJIT SINGH SAHNI,<br>               Appellant,<br>v.<br>YOSHIHIRO TAJIMA; TOMOKO NAKAJIMA; KATHY A. DOCKERY,<br>Chapter 13 Trustee,<br>               Appellees. | **MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Central District of California
Sandra R. Klein, Bankruptcy Judge, Presiding

Before: TAYLOR, LAFFERTY, and GAN, Bankruptcy Judges.

Memorandum by Judge Taylor.
Concurrence by Judge Lafferty.

---

     * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

1

**INTRODUCTION**

Creditor Swarnjit Singh Sahni ("Sahni") appeals the bankruptcy court's order confirming the first amended chapter 13[1] plan proposed by Yoshihiro Tajima and Tomoko Nakajima ("Debtors"). Pre-confirmation, Debtors filed an objection to Sahni's $385,926.55 proof of claim and an adversary proceeding challenging the amount and validity of Sahni's junior lien on their residence. But in their first amended plan, the Debtors identified Sahni's claim as secured and proposed to pay a portion of the claim amount, with interest at a non-note rate, over the 5-year life of the plan. The plan also provided for unspecified modification or dismissal if Debtors' claim objection failed. Sahni objected to this treatment. At the confirmation hearing, the Debtors proposed an additional lump sum payment in month 24 which would purportedly allow payment of the Sahni's claim in full over five years at an amount that assumed litigation success. Sahni continued to object, but the bankruptcy court, with almost no findings, confirmed the plan. Given the lack of adequate findings and the plan's facial failure to comply with §§ 1322 and 1325(a), we VACATE and REMAND.

**FACTS[2]**

**A.    Debtors' chapter 13 petition**

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Rule" references are the Federal Rules of Bankruptcy Procedure.

[2] Where necessary, we have exercised our discretion to take judicial notice of the

Debtors' chapter 13 schedules, plan, and claims docket evidence only one serious financial problem. They owe a small priority tax debt and a single unsecured credit card claim. Their plan pays these claims in full. And while two trust deeds encumber their residence (the "Home"), the senior secured debt is neither in default nor paid under their plan. But the Debtors listed Sahni's fully matured claim as "disputed," and they filed their chapter 13 petition on the eve of Sahni's foreclosure under the junior trust deed encumbering the Home.

## B.    The dispute with Sahni

Sahni's second trust deed secures a note evidencing a $300,000 hard-money, high-interest, short-term loan (the "Loan"). The note bears non-default interest at 10% and matured pre-petition, approximately one year after origination.

The Debtors were unable to repay the Loan as required, and Sahni pursued foreclosure. When the Debtors filed bankruptcy, Sahni filed a proof of secured claim in the amount of $385,926.55, all of which was characterized as arrearage in the form of unpaid principal, interest, late fees, and pre-petition attorneys' fees. Further, the schedules reflected that Sahni was over-secured, so contractual interest would continue over the

---

dockets and imaged papers filed in Debtors' bankruptcy case and the related adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

3

course of the chapter 13 case. Debtors' schedules evidence no ability to pay the claim amount in full in equal monthly installments over 60 months.

But the Debtors' situation is far from hopeless. They objected to Sahni's claim, alleging that he failed to provide disclosures as required by the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*("TILA"), and the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 *et seq.* ("RESPA"), when making the Loan; they requested rescission and argued that Sahni, at best, held an unsecured claim in a vastly reduced amount. Specifically, the Debtors allege that they are entitled to a statutory reduction of the debt by 200% of the loan charges of $79,939.73 or $159,879.46. They also assert that the interest rate is usurious and is an unenforceable penalty, at least in part. After giving credit for the $30,000 interest prepayment, removal of the asserted pre-petition fees and costs and certain other reductions, they conclude that Sahni has an unsecured claim of no more than $132,089.07.

The Debtors also filed an adversary proceeding on the same theories seeking a determination of the validity, priority, or extent of Sahni's lien, objecting to Sahni's claim, and requesting a reduction of the interest rate to 7.89%.[3]

In response, Sahni conceded that he did not make TILA and RESPA disclosures but argued that he is not a "creditor" under these

---

[3] Debtors computed interest as the "Average Prime Offer Rate of 4.39% plus 3.5% interest for subordinate lien under 12 CFR 1026.35(a)(iii)."

statutes and therefore had no disclosure obligations. He also argued that the rescission notice was untimely, that the statute of limitations had run, and that the Debtors had not and could not tender the rescission amount.

As a result of this dispute and until its resolution, formulation of a chapter 13 plan and confirmation consistent with § 1325(a) was necessarily complicated.

## C.     The initial chapter 13 plan process

Debtors' original plan paid nothing to Sahni. But after it drew objections from the chapter 13 trustee as well as Sahni, Debtors filed an amended plan. The amended plan increased monthly plan payments from $43.98 to $1,112 per month in months five through sixty and provided for $869.00 in monthly payments to Sahni.

The amended plan placed Sahni's claim in class 2 which is reserved for secured obligations maturing after the plan term. This is curious because no one disputes that the claim matured pre-petition even as the Debtors hotly dispute that it should be treated as secured. It then provided that the arrearage on the Sahni claim was $132,089.07 and called for an interest rate of 7.89%. And this was odd because the amended plan paid Sahni only $52,140 and obviously problematic because it does not pay the specified arrearage in equal monthly installments as required by § 1325(a)(5)(B)(iii)(I).

And contained in the amended plan were other facial problems. Plan payments for the first four months were only $43.98 so it is mathematically

impossible for the trustee to pay $869.00 in each of 60 months – even as we assume there is no problem if she is able to advance the required payments at confirmation. The plan was confirmed a little over five months into the case. At that point, five months of payments at $869.00 would equal $4,345. But the total amount actually paid under the plan, four months of $43.98 payments plus one month of $1,112 payments equaled only $1,287.92 at confirmation. The amended plan would be in default immediately.

Also, the amended plan provided that the amount of arrearage in the proof of claim ($385,926.55) controls over the amount of arrearage in the plan ($132,089.07). This further complicates the ability to make payments as required by the Code.

Section IV.D. of the amended plan attempted to remedy some of the amended plan's problem through a non-standard provision that allowed for a final calculation of the amount owed to Sahni after conclusion of the claim objection and adversary proceeding litigation. It provided that the amended plan's terms did not have claim preclusive effect, required Sahni to file an amended proof of claim after litigation concluded, and allowed the Debtors, within an unspecified timeframe, to file a motion to further modify the amended plan if it became "infeasible" as a result of this litigation. Section IV.D. also allowed the chapter 13 trustee, but not Sahni, to seek dismissal if the Debtors failed to file a modification motion. But this language didn't resolve the facial problems in the amended plan. And it is silent as to the impact of any post-litigation appeal.

Lengthy comments and calculations of the estimated amount owed to Sahni based on the alleged TILA and RESPA violations followed. The explanation stated: "[t]he principal amount for the sole purpose of disbursement of funds in this matter is $132,089.07." There was no explanation regarding the proposed amended plan payment of only $52,140.

Sahni objected to confirmation of the amended plan on several grounds including: its failure to pay his claim in full; its failure to pay even $132,089.07; feasibility; the allegedly arbitrary and inappropriate reduction in the interest rate; and bad faith.

## D.   Confirmation of the amended plan as modified

At the third continued confirmation hearing, the chapter 13 trustee proposed, and Debtors' counsel agreed, to modify the amended plan to provide for a balloon payment of $119,395 in month 24.[4] Sahni objected to the proposal and requested time to do discovery and a Rule 2004 exam.

The bankruptcy court, however, confirmed the amended plan as so modified (hereafter, the "Confirmed Plan") at the hearing. It noted that the Debtors had significant equity in the Home and posited that Debtors would easily qualify for a refinance if necessary to meet their obligations under the Confirmed Plan. The bankruptcy court made no findings

---

[4] The confirmation order states that this equates to total plan payments of $180,730.92.

regarding how the Confirmed Plan met the confirmation requirements of § 1325 beyond the reference to feasibility.

The confirmation order omitted the language outlining the impact of TILA and RESPA on the Sahni claim. Consistent with this deletion, the record reflects a total absence of any attempt to resolve or even consider the Debtors' TILA/RESPA claims before confirmation. The claim objection and adversary proceeding remain pending.[5] The bankruptcy court has not held a status conference, and the parties appear to have made little progress towards resolution. This is perplexing.

Both Debtors' claims and Sahni's defenses are plausible, but the dispute appears capable of prompt and perhaps summary resolution after applying the law to the undisputed or easily determined facts. At bottom, the first question is whether TILA disclosures were required. And the controlling statutes and regulations are clear. Sahni became subject to TILA if he made five or more loans during the relevant time period or a lesser number of loans having certain characteristics such as high costs. 15 U.S.C. § 1602(g); 12 C.F.R. § 1026.2(a)(17).[6] Next, if TILA is controlling, resolution of the statute of limitation and timing issues probably requires little beyond

---

[5] The parties stipulated to continue the claim objection motion status conference to July 26, 2022, pending the outcome of this appeal. The bankruptcy court continued the adversary status conference to that date as well. Thereafter, the bankruptcy court further continued the status conferences.

[6] As the parties' respective briefs focus on TILA, we cite only the TILA sections and regulations at issue in the pending litigation.

reference to a calendar. *See* 15 U.S.C. § 1635(f). And if rescission is available, the bankruptcy court has some discretion as to whether and how the tender of the rescission amount will occur. *See* 15 U.S.C. § 1635(b). Significant factual disputes do not appear likely to complicate this analysis.

Sahni timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(L). Subject to the discussion below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.     Is the bankruptcy court's order confirming the Confirmed Plan a final order giving the Panel jurisdiction over this appeal?

2.     Did the Confirmed Plan properly treat Sahni's claim such that confirmation was appropriate?

## STANDARD OF REVIEW

Whether the order on appeal is a final order over which we have jurisdiction under § 158(a)(1) is a question of law we assess de novo. *E.g.,* *Jue v. Liu (In re Liu)*, 611 B.R. 864, 870 (9th Cir. BAP 2020). "Under the de novo standard of review, we do not defer to the lower court's ruling but freely consider the matter anew, as if no decision had been rendered below." *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir.1988) (citing *Exner v. FBI*, 612 F.2d 1202, 1209 (9th Cir. 1980)).

We review de novo a bankruptcy court's interpretation of the Bankruptcy Code. *Meruelo Maddux Props.-760 S. Hill St. LLC v. Bank of Am., N.A. (In re Meruelo Maddux Props., Inc.)*, 667 F.3d 1072, 1076 (9th Cir.2012).

A bankruptcy court's decision concerning confirmation of a chapter 13 plan is reviewed for abuse of discretion. *Bank of Am. Nat'l Tr. and Savs. Ass'n (In re Slade)*, 15 B.R. 910, 913 (9th Cir. BAP 1981). A bankruptcy court abuses its discretion if it applies the wrong legal standard, or misapplies the correct legal standard, or if it makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

### A.  Jurisdiction

#### 1.  The confirmation order is a final order.

The Debtors assert that the confirmation order is not final for appeal purposes and that this appeal should be dismissed. We disagree.

"[A] bankruptcy order is appealable where it 1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed.'" *Wiersma v. Bank of the West (In re Wiersma)*, 483 F.3d 933, 939 (9th Cir. 2007) (cleaned up); *see, Ritzen Gr., Inc. v. Jackson Masonry, LLC,* 140 S.Ct. 582, 588 (2020) ("Only plan approval . . . 'alters the status quo and fixes the rights and obligations of the parties."). (cleaned up). Section 1327(a) provides that the "provisions of a confirmed plan bind

10

the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

Debtors argue that the appeal is not "ripe" pointing to the paragraph in the Confirmed Plan which states that it is not "res judicata [nor does it] bind Creditor, SWAR[N]JIT SINGH SAHNI, to the amount proposed [therein] within the meaning of 11 U.S.C. § 1327 or the calculation of Amended Claim No. 6." But the confirmation order clearly determined the discrete issue of the confirmability of the Confirmed Plan. And it seriously affected and fixed the substantive rights and obligations of all relevant parties and the creditor body as a whole. Sahni will be paid as provided by the Confirmed Plan, and he is bound by its injunction. The fact that there is a potential for changed treatment based on a future contingency does not make the confirmation order less than final. And this is particularly true where this contingency is provided for by the Confirmed Plan.

### 2. The appeal is not moot.

The Debtors also argue that the appeal is moot because "the issues presented are no longer live, and no case or controversy exists. The test for mootness is whether the Court can still grant effective relief to the prevailing party if the Court decides the merits in their favor," citing *Pilate v. Burrell (In re Burrell)*, 415 F.3d 994, 998 (9th Cir. 2005).

Mootness is a basis to dismiss an appeal. *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("federal courts are without power to decide

questions that cannot affect the rights of litigants in the case before them.")
(citation omitted). But this appeal is not moot.

The Debtors do not explain why the bankruptcy court cannot grant
effective relief to either party upon remand or why this is not "a real and
substantial controversy admitting of specific relief through a decree of a
conclusive character." *Id.* Put bluntly, this is essentially a two-party case
where the issues between Debtors and Sahni can be easily adjusted
through a new plan and a change in payment terms, if feasible, or case
dismissal or conversion, if a payment change is not feasible and a plan
cannot be confirmed.

**B.** **The Code's confirmation requirements relating to secured claims applied to the Sahni claim and were not met in the Confirmed Plan.**

**1.** **The bankruptcy court did not estimate the Sahni claim for purposes of plan confirmation.**

Debtors argue at length that the bankruptcy court estimated Sahni's
claim at $132,089.07 for the purpose of chapter 13 plan confirmation.

Section 502(c) states:

> (c) There shall be estimated for purpose of allowance
> under this section—
> (1) any contingent or unliquidated claim, the fixing or
> liquidation of which, as the case may be, would unduly delay
> the administration of the case.

11 U.S.C. § 502(c).

"'Estimation' simply means that the bankruptcy court may use its
discretion in determining the allowability of claims in bankruptcy." *Falk v.*

*Falk (In re Falk)*, BAP No. NC-12-1385-DJuPa, 2013 WL 5405564, at *5 (9th Cir BAP Sept. 26, 2013) (citations omitted); *see also*, *In re Pac. Gas & Elec. Co.*, 295 B.R. 635, 642 (Bankr. N.D. Cal. 2003) ("estimation under section 502(c) may be for broad or narrow purposes."); *In re N. Am. Health Care, Inc.* 544 B.R. 684 (Bankr. C.D. Cal.2016) ("[e]stimation can take various forms and can be made for different purposes.") But there are several problems with the assertion that estimation occurred here.

First, neither § 502(c) nor estimation in general were discussed either at the confirmation hearing or in any of the plan-related documents, nor did the Debtors request estimation by motion or otherwise. The estimation argument is totally unsupported by the record.

Second, as the Bankruptcy Code states, a claim may be estimated only when the claim is contingent or unliquidated. The claim here is obviously not contingent and neither party argues otherwise. True, Debtors assert on appeal that the claim is unliquidated but it is a contract claim and the amount owed, albeit disputed, is readily discernable. *Nicholes v. Johnny Appleseed of Wash. (In re Nicholes)*, 184 B.R. 82, 89 (9th Cir. BAP 1995). And Debtors contradict their own position on this point because in their amended schedule D, they listed the Sahni debt as "disputed" but the box "unliquidated" is not checked.

Finally, estimation is appropriate only where the time required to complete the allowance process "would unduly delay the administration of the case." *See* 11 U.S.C. § 502(c). The bankruptcy court commented at the

13

confirmation hearing that it expected the pending issues to be "resolved well before [two years]." We agree; the record supports that the Sahni claim issues can be very promptly resolved. Absent a finding of undue delay based on the facts of this case, estimation was not appropriate.

### 2. If the bankruptcy court estimated the claim, it became an allowed secured claim.

As stated, § 502(c) provides that a claim "shall be estimated for purpose of allowance under this section." If the bankruptcy court actually estimated the Sahni claim at $132,089.07, it became an allowed secured claim for purposes of plan confirmation. As an allowed secured claim, the Confirmed Plan must pay it in accordance with § 1325(a)(5)(B). It doesn't.

### 3. The Sahni claim must be paid as required by the Code.

Where a chapter 13 plan identifies a claim as secured and interest bearing, it must pay it in accordance with § 1325(a)(5)(B). The Confirmed Plan classified the Sahni claim as a class 2 secured claim and proposed to pay it in an amount calculated by Debtors with interest. Confusingly, the Confirmed Plan facially required payment of the proof of claim amount as it states that: "[t]he arrearage amount stated on the proof of claim controls over any contrary amount listed below." But we need not resolve this facial inconsistency because the Confirmed Plan pays neither the arrearage expressly stated in the Confirmed Plan nor the arrearage in the Sahni proof of claim as required by the Code.

14

Debtors argue that Sahni had no right to a payment that met the requirements of §1325(a)(5)(B) because of their pending objection to the Sahni claim. But this argument is contrary to the plain language of their own plan. And it is otherwise not supportable as a matter of law. *See de la Salle v. U.S. Bank (In re de la Salle)*, 461 B.R. 593, 602 (9th Cir. BAP 2011). A pending objection does not allow a chapter 13 debtor to ignore the Code's requirements for plan treatment of secured claims.

**4.      The Sahni claim is not paid as required by § 1325(a)(5)(B).**

Section 1325(a)(5)(B)(iii)(I) provides that the arrearage on an allowed secured claim must be paid in equal monthly payments over the life of the plan. Again, Debtors' argument that their claim objection renders this provision inapplicable lacks merit.

Even using the Debtors' arrearage amount, the Confirmed Plan does not comply with § 1325(a)(5)(B)(iii)(I). It makes monthly payments designated at the confirmation hearing as "interest-only adequate protection payments" and a one-time payment of some or all of $119,395. Absent Sahni's consent, and until receipt of the balloon payment, § 1325(a)(5)(B)(iii)(I) required Debtors, at a minimum, to pay the amount necessary to amortize their self-selected secured claim amount, $132,780, over the plan term. This required monthly payments of more than $2,213 at confirmation; the Confirmed Plan pays only $869.00.

And again, the Confirmed Plan's language stating that the actual arrearage to be paid is the amount in the Sahni proof of claim would require a much greater monthly payment to Sahni.

There is no finding or anything in the record that supports this deviation from the chapter 13 plan confirmation requirements.[7]

We assume that in proposing the balloon payment the chapter 13 trustee was trying to be an honest broker of a plan that had a chance of garnering secured creditor consent. But when consent is not forthcoming, neither the chapter 13 trustee nor the bankruptcy court should overlook a plan's noncompliance with the Code. And the chapter 13 trustee's consent to a plan should not support deviation from the correct application of § 1325(a)(5). Expediency has a place, but if the related litigation does not support a prompt imposition of a litigation injunction, if creditor consent cannot be obtained to interim plan treatment pending litigation outcomes, or if payment pursuant to § 1325(a)(5) is not possible, then case dismissal or conversion may be the appropriate route. In this case, Debtors should consider an injunction request; they might well be able to establish likelihood of success on the merits.

> **5.    We cannot determine that the Confirmed Plan complies with § 1325(a)(1) because it does not comply with § 1322(a).**

---

[7] And, as already discussed, other facial problems with the Confirmed Plan's payment structure exist.

Because the Sahni debt is secured by the Debtors' principal residence, it cannot be modified. *See* 11 U.S.C. § 1322(b)(2) (the plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . ."). And because, as the bankruptcy court noted, it is oversecured, until the claim objection is resolved, Sahni has the right under § 506(b) to postpetition interest under his contract.

The Confirmed Plan does not comply with § 1322(b)(2) because it treats Sahni's claim as secured by the Home and modifies his contractual interest rate. The non-default contractual interest rate is 10%. The Confirmed Plan purports to pay 7.89%.

**6.     Feasibility under § 1325(a)(6) is not established.**

Section 1325(a)(6) requires a judicial determination that the debtor can make plan payments and comply with the plan. Here, the bankruptcy court observed that a refinance or sale was feasible and would allow payment of the month-24 balloon payment. But the Confirmed Plan requires neither sale nor refinance. And it establishes no timeline that allows for reasonable certainty as to the accomplishment of these acts. Further, it does not explain how Debtors would make payments on this new debt while concurrently paying their remaining obligations.

Of more concern is the fact that the Confirmed Plan makes no meaningful provision for payment of the claim if Sahni prevails in defending his claim. It, in effect, says that the Debtors will try to do

17

something, on a schedule entirely of their own choosing, and will attempt a further modified plan. But at that point sale or refinance may not work.

First, while the implication is that the Debtors will do something promptly, again there is no particular timing requirement. And unless Debtors can almost immediately produce either payment in full or a regular payment stream that would amortize the debt in regular monthly installments over the life of the remaining plan term, plan modification is impossible over Sahni's opposition if he wins the litigation. Again, a plan must comply with § 1325(a)(5)(B). *See* 11 U.S.C. § 1329(b)(1). And a plan that indefinitely delays appropriate payments on this secured claim after an objection is overruled is unconfirmable.

Finally, the Ninth Circuit has determined that the impact of pending litigation must be evaluated when determining the feasibility of a chapter 11 plan. *See Sherman v. Harbin (In re Harbin)*, 486 F.3d 510, 519 (9th Cir. 2007). The Ninth Circuit stated, "we cannot conclude, without the benefit of the bankruptcy court's analysis of the issue, whether the plan was in fact feasible when confirmed." *Id.* at 520. In *Harbin,* this required consideration of the impact of a successful appeal. We see no reason why the result in this chapter 13 case should be different.

Given the total lack of findings and the problems obvious from the known facts, we cannot conclude that feasibility exists on this record.

**C.    The matter must be remanded because there are no findings of fact or conclusions of law.**

We cannot discern, from the transcript of the hearing or the record, the factual or legal basis on which the bankruptcy court confirmed the plan. It appears that the bankruptcy court believed that there was significant equity in the Home and therefore no risk to Sahni in waiting for the claim litigation to conclude. Findings might identify a different basis for decision but we are left to mere speculation.

An objection to confirmation is a contested matter under Rule 9014. Rule 7052 applies, and the bankruptcy court is required to make separate findings of fact and conclusions of law in support of an order granting or denying confirmation over a party's objection. *See, e.g.*, *550 W. Ina Rd. Tr. v. Tucker (In re Tucker)*, 989 F.2d 328, 330 (9th Cir. 1993) (good-faith objection to confirmation requires findings of fact by the bankruptcy court.); *accord Spokane Ry. Credit Union v. Gonzales (In re Gonzales)*, 172 B.R. 320, 325 (E.D. Wash. 1994) (remanding because the bankruptcy court "provided no findings of fact, conclusions of law, or analysis in reaching its decision").

Here we confront a facially nonconfirmable plan. And absent some resolution or reasoned consideration of the claim objection, we cannot see a path to affirmance. And the lack of fact finding also makes it impossible for us to do other required analysis.

If the bankruptcy court, in fact, estimated the claim, findings would so establish. Findings might also clarify how the claim at the estimated amount is paid in full, whether the claim objection is likely to be successful,

19

and whether a feasible plan that complies with § 1325 is possible if it does not. But absent such findings we cannot find compliance with § 1325(a).

## CONCLUSION

We acknowledge the pragmatism in the bankruptcy court's approach. It appears likely that Sahni will be paid in full if he successfully defends his claim given the equity in his collateral. And the Debtors are likely to facilitate this payment through refinance, if possible, to save the Home. But the provisions of § 1325(a) must be met before a chapter 13 plan is confirmed and the plan injunction binds creditors. Pragmatism and an understandable desire to get a plan confirmed quickly are not a substitute for compliance with the Code. The fact that Sahni may be able to obtain payments in full through foreclosure in a few years does not meet the requirements of § 1325(a).

Instead, the record supports that the Confirmed Plan's injunction is a substitute for a preliminary injunction in the adversary proceeding and that Debtors obtained this injunctive relief without a determination regarding the likelihood of success on the merits of the TILA/RESPA claims and a consideration of other required factors. Nothing in the current record supports the appropriateness of injunctive relief because there is nothing suggesting that the bankruptcy court considered the injunction standards.

And this push to confirm a place-holder chapter 13 plan is unfair to at least one of the parties and maybe both. Sahni may not be paid as required by chapter 13 while he is barred from access to his claimed

20

collateral. And this is true even though no one was required to prove that Debtors' attack on his claim is likely successful. And, as to the Debtors, they have significantly more flexibility under chapter 13 if Sahni's claim is unsecured and reduced. Yet they were required to propose a plan that may be generous before they were allowed to pursue their litigation.

Finally, we recognize that litigation claims often conflict with the reasonable desire for prompt confirmation of a chapter 13 plan. And we also acknowledge that a court may determine that the resulting delay is unreasonable within the meaning of § 1307(c)(1). But dismissal, not confirmation of a place-holder plan, is the appropriate result of such a decision. And before dismissing the case, a bankruptcy court must find that a delay to accommodate required litigation is not appropriate. No such findings exist on this record. And, we emphasize, this is not a case where the litigation claims are facially frivolous, repetitive of litigation already lost in another court, or likely in bad faith. Debtors assert a claim objection that deserves prompt and serious attention.

Based on the foregoing, we VACATE and REMAND to the bankruptcy court for further proceedings consistent with this memorandum.

Concurrence begins on next page.

21

LAFFERTY, Bankruptcy Judge, Concurring.

I concur with my colleagues' careful and well-reasoned disposition of this challenging matter.

I write separately because in my view this case presents, starkly, a scenario that highlights a tension in chapter 13 between the implicit but unmistakable policy of confirming plans as soon as practicable, and the uncertainty of how to resolve and work into the confirmation process litigation issues, the outcome of which are confirmation (and feasibility) determinative.

On the speedy confirmation side, though chapter 13 does not explicitly set forth a deadline for confirmation of a plan and does not expressly empower the bankruptcy court to set such a deadline, the policy in favor of such an outcome resonates implicitly throughout the statute. Indeed, (i) the requirement that only "individuals with regular income" may be debtors under chapter 13; (ii) the relatively modest (in the context of economic realities in some jurisdictions) debt limits for chapter 13 filings; and (iii) the move to nationalize forms for chapter 13 plans, collectively indicate, strongly, that chapter 13 is set up to help regular folks with certain "regularized" problems and is not meant to promote or indulge the three-ring circus that chapter 11 can sometimes appear to be. Also, the requirement that a chapter 13 debtor file a plan essentially immediately upon filing the petition, and the provision that the court may convert or

22

dismiss based on "unreasonable delay by the debtor" are strong indicators that, in the view of the drafters, in most cases chapter 13 "works" only if it works expeditiously, i.e., plans are confirmed and become effective as soon as practicable. The speedy confirmation policy expressed in these provisions recognizes that it's important for chapter 13 debtors promptly to propose and commit themselves to a plan, and, given that payments to most creditors start only after confirmation, that plans get confirmed promptly.

None of this plays out easily when a debtor's case presents a complex litigation-based problem, whether an objection to a claim or the debtor's assertion of a claim against a creditor. And the problem is exacerbated when the debtor's reasons for not dealing with challenging confirmation issues are litigation based, but vague and imprecise, and not easily evaluated (or maybe easily evaluated so long as one may indulge some real world cynicism). As the Memorandum points out, such does not appear to be the case here—the debtor's objections to Sahni's claim appear to be quite precise, and capable of a relatively expeditious determination.

In any event, the Code doesn't give a lot of guidance about how to integrate litigation problems into chapter 13 plans or into the confirmation process, so courts do lots of different things in such situations—sometimes they delay confirmation until the litigation issues are resolved, sometimes they prescribe alternative treatments based on the outcome of the litigation, and sometimes they try to "confirm around" the problem via other means.

None of these approaches are expressly prohibited by the Code or the Rules, and thus they are all theoretically supportable—provided that, as the Memorandum instructs, they are based not on a general but imprecise sense of sufficient value available for creditors, and an unspoken determination of when or how an allowed claim may eventually be paid, but rather on a fair application of confirmation standards (including feasibility, treatment of creditors in line with the Code's requirements and, where delay may be involved, a fair application of injunctive relief principles), and provided that those standards and that reasoning are fairly and plainly articulated.