NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-18-1218-SKuTa |
| ARNOLD W. GROSS and LAURIE E. GROSS, | Bk. No. 9:17-bk-10857-DS |
| Debtors. | |
| ARNOLD W. GROSS; LAURIE E. GROSS, | |
| Appellants, | |
| v. | **MEMORANDUM**\* |
| ELIZABETH F. ROJAS, Chapter 13 Trustee, | |
| Appellee. | |

Argued and Submitted on July 18, 2019
at Pasadena, California

Filed – August 7, 2019

Appeal from the United States Bankruptcy Court

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

for the Central District of California

Honorable Deborah J. Saltzman, Bankruptcy Judge, Presiding

_____

Appearances:    Janet Audrey Lawson argued for Appellants; Melissa K. Besecker argued for Appellee.

_____

Before: SPRAKER, KURTZ, and TAYLOR, Bankruptcy Judges.

**INTRODUCTION**

Chapter 13[1] debtors Arnold W. Gross and Laurie E. Gross appeal from an order dismissing their chapter 13 case. They also appeal from an order denying them relief under Civil Rules 59 or 60.

The Grosses' chapter 13 case had been pending for roughly 14 months at the time the bankruptcy court dismissed their case. And they had not confirmed a chapter 13 plan during that time, though the court continued the confirmation hearing seven times. On the other hand, there is nothing in the bankruptcy court's findings or in the record indicating that these continuances resulted from misconduct or neglect on the part of the Grosses or their counsel. Instead, the record evidences that the

_____

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

confirmation hearings were continued from time to time to permit the Grosses to pursue challenges to the secured claims of two major creditors. Both of these challenges ultimately succeeded. Moreover, throughout the delay in confirming a plan, the Grosses duly made their $2,500.00 monthly plan payments.

At the last confirmation hearing held, the bankruptcy court became concerned that the Grosses were ineligible for chapter 13 and dismissed their bankruptcy case. However, the Grosses filed a timely motion for relief from the dismissal ruling in which they demonstrated that the chapter 13 eligibility concerns were unfounded. Appellee chapter 13 trustee Elizabeth Rojas has conceded this point on appeal. Though the bankruptcy court also had noted a handful of procedural missteps that prevented confirmation of the Grosses' plan at the last confirmation hearing, those mistakes were not sufficient to support dismissal on this record. Accordingly, we REVERSE.

## FACTS

The Grosses commenced their chapter 13 bankruptcy case in May 2017. They filed their original plan at the same time they filed their chapter 13 petition. The original plan provided for monthly payments of $2,500.00 for 60 months. The plan committed to pay all priority claims and estimated a 32% distribution to the Grosses' nonpriority unsecured creditors.

The plan and the Grosses' bankruptcy schedules identified Select Portfolio Servicing, Inc. ("Select") as a secured creditor with a first priority

lien against the Grosses' residence. The plan provided that the Grosses would directly pay Select's postconfirmation mortgage payments outside their plan. But the Grosses also contemplated curing $29,000.00 in past-due mortgage payments through their plan payment. The plan further provided for direct payments to the secured creditors holding liens against their vehicles.

Finally, the plan contemplated avoidance of the junior lien held by Specialized Loan Servicing, LLC against the Grosses' residence.[2] The Grosses' schedules indicated that, given the value of their residence, this junior lien was wholly unsecured.

In July 2017, shortly before the first confirmation hearing, the chapter 13 trustee filed an objection to the Grosses' plan. The trustee stated that the Grosses had failed to serve their plan on all of their creditors and to disclose their 1997 chapter 7 case. The trustee also pointed out that the Grosses had not provided sufficient information regarding their income. According to the trustee, the Grosses' 2015 and 2016 tax returns needed to be provided. The trustee also needed six months' worth of paystubs and their calculation of aggregate annual income for the year immediately preceding their chapter 13 case filing.

The trustee further maintained that the Grosses' plan was not

---

[2] The Grosses' subsequently-filed motion to avoid lien suggests that Specialized Loan Servicing was the loan servicer on behalf of Ownit Mortgage Solutions, Inc.

4

feasible. As the trustee noted, the plan did not provide for certain creditors' claims. Most notably, the plan did not include any provision for the Internal Revenue Service's ("IRS") tax claims, which included a $127,904.55 secured claim and totaled more than $135,000.00. The trustee also challenged the sufficiency of the evidence relating to whether the Grosses' plan satisfied the "best efforts" requirements of § 1325(b)(1)(B). According to the trustee, the Grosses' reported expenses were too high and required additional documentation.[3]

The original confirmation hearing was held on July 27, 2017. We do not know what transpired at the hearing because the parties to this appeal have not provided us with a hearing transcript. We only know that the hearing was held and was continued to September 28, 2017, as reflected on the docket.[4]

Roughly a month after the July 2017 confirmation hearing, the

---

[3] It is unclear whether the Grosses ever addressed the trustee's concerns regarding the amount of the Grosses' expenses. However, this concern was not raised at the last confirmation hearing. Nor is there anything in the record to indicate that this concern factored into the bankruptcy court's decision to dismiss.

[4] With the exception of the last confirmation hearing held on July 26, 2018, the same is true for all of the confirmation hearing dates referenced below. We do not know specifically what transpired at these hearings because the parties only provided us with one transcript: the transcript from the July 26, 2018 final confirmation hearing. We have searched the docket, and the imaged documents appended thereto, for additional information regarding what transpired at the other confirmation hearings to no avail. We can take judicial notice of the contents of the bankruptcy court's docket. *Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

Grosses filed a motion to avoid the junior liens of Ownit Mortgage Solutions, Inc. and the IRS. The Grosses reasoned that the liens could be avoided under § 506(d) because the liens were wholly unsecured. The motion was set for hearing at the same time and place as the continued confirmation hearing. On September 28, 2017, the hearings on both matters were continued to November 30, 2017.

Shortly before the continued confirmation hearing, on November 13, 2017, the trustee filed another objection to the Grosses' plan. The new objection was similar to the trustee's first objection. It raised almost all of the same issues, except the trustee raised an additional concern regarding incomplete schedules. The trustee noted that the Grosses held title to a third vehicle, a 2013 Toyota Corolla, encumbered by a lien in favor of Toyota Motor Credit Corp. As pointed out by the trustee, the Grosses needed to amend their schedules to list both the vehicle and the corresponding debt.

On November 28, 2017, the Grosses filed an amended motion to avoid lien. The amended motion changed the name of the junior lienholder from Ownit Mortgage Solutions, Inc. to the Bank of New York Mellon. The amended motion also dropped the request for relief against the IRS. On November 29, 2017, the Grosses objected to the IRS's proof of claim. In their claim objection, the Grosses argued that the IRS's claim should be treated as wholly unsecured because all of their property subject to the IRS lien

6

was either fully encumbered or exempt.

Also on November 29, 2017, the Grosses filed an amended Schedule A/B. In it, the Grosses addressed the trustee's concern regarding the allegedly omitted vehicle. The Grosses maintained that they co-signed for the vehicle so that they could purchase it for their son. According to the Grosses, their son had possession and control of the vehicle and made all of the payments. Based on these allegations, the Grosses asserted that they had no interest in the vehicle.[5]

At the November 30, 2017 confirmation hearing, the bankruptcy court continued the confirmation hearing to December 21, 2017, which was the same date the IRS claim objection was set for hearing. Meanwhile, the bankruptcy court vacated and reset the hearing on the first amended lien avoidance motion for the same date. The court subsequently rescheduled all of these hearings for January 25, 2018.

The day before the January 25, 2018 confirmation hearing, the Grosses filed a declaration itemizing their sources of income and identifying the amounts obtained from each source. The Grosses presumably submitted this declaration to address the trustee's concerns regarding income sources raised in both of her plan objections.

At the January 25, 2018 hearing, the bankruptcy court granted the

---

[5] The Grosses later filed an amended Schedule D to the same effect. But the Grosses did not file their amended Schedule D until March 21, 2018.

motion to avoid the lien of the Bank of New York Mellon, and continued the IRS claim objection hearing and the confirmation hearing to March 22, 2018. The court entered the order avoiding the Bank of New York Mellon's lien on February 13, 2018. The order specified that, subject to the terms set forth therein, the Bank of New York Mellon's lien in the amount of $174,361.12 was avoided, but that amount would be treated as an unsecured claim to the extent allowed.

At the March 22, 2018 hearing, the bankruptcy court in large part sustained the Grosses' objection to the IRS's secured claim, though the docket reflects that the matter was continued to May 24, 2018. The court also continued the confirmation hearing to May 24, 2018. On May 16, 2018, the court entered its Order on Objections to Claims, which allowed the IRS $2,500.00 as a secured claim and allowed the $133,156.71 balance of the claim as unsecured. At the May 24, 2018 confirmation hearing, the court once again continued the matter, this time to July 26, 2018.

In June 2018, the Grosses filed and served a first amended chapter 13 plan. The amended plan now provided for three priority unsecured claims, as follows: (1) chapter 13 trustee's fees, estimated in the amount of 11% of all plan payments; (2) $2,000.00 in chapter 13 attorney's fees; and (3) an IRS priority claim in the amount of $2,626.18. The amended plan also provided for the surrender of the 2013 Toyota Corolla. Otherwise, the amended plan was similar to the original plan.

The amended plan contained a number of errors. For instance, it still stated the Grosses' intention to avoid the junior lien of Specialized Loan Servicing, LLC, when in fact that lien already had been avoided.[6] The amended plan also misstated the date of the confirmation hearing. The caption page of the amended plan erroneously listed the original confirmation hearing date of July 27, 2017, instead of the pending continued hearing date of July 26, 2018. The notice of the continued confirmation hearing and the amended plan contained the same mistake.

At the July 26, 2018 confirmation hearing, the court pointed out the mistake in the hearing notice regarding the date of the hearing. The court also pointed out that the hearing notice listed the wrong courtroom number. The trustee, through counsel, noted that the amended plan reduced the percentage distribution to unsecured creditors (from 32% to 31%). According to the trustee, Mrs. Gross's signature was also missing from the amended plan. And the trustee stated that she still needed a

---

[6] Additionally, the trustee's November 2017 plan objection included an item regarding the amount of prepetition arrears on the Grosses' senior mortgage debt. The trustee noted that the original plan provided for repayment of $29,000.00 in prepetition arrears, whereas the creditor's proof of claim stated that $30,327.25 was in arrears prior to the bankruptcy filing. On appeal, the trustee pointed out in his responsive brief that the Grosses' first amended plan also failed to address this discrepancy. The trustee contends that the Grosses' failure to address this issue, of which the Grosses had months of advance notice, bolsters the court's decision to dismiss. However, this issue was not raised at the final confirmation hearing. Nor is there anything else in the record to indicate that the bankruptcy court was aware of this lingering issue or considered it as part of its basis for dismissing the Grosses' chapter 13 case.

complete copy of the Grosses' 2017 tax return, as they had only "uploaded just some schedules and extraneous documents, you know, like worksheets and things like that. . . ."

After raising the above problems with confirmation, the trustee, for the first time, claimed that the Grosses exceeded the debt limit for eligibility for chapter 13. The trustee argued that when the IRS's unsecured claim and the stripped junior lien of the Bank of New York Mellon were added to the preexisting amount of unsecured debt, the Grosses' aggregate unsecured debt totaled roughly $474,000.00, though she provided no itemization for her calculation of unsecured debt. At the time the Grosses filed their petition, § 109(e) limited chapter 13 eligibility to only those debtors with unsecured debt of less than $394,725.00.

The Grosses had no advance notice of any of the trustee's concerns. None of them had been raised in the trustee's two prior written objections to the original plan. And the trustee did not file a written objection to the amended plan. The Grosses were represented by appearance counsel at the hearing, who was unable to adequately address any of these new issues.[7]

---

[7] By "appearance counsel" we mean someone other than the counsel the debtors retained to represent them in their case, who for a fixed fee agrees to represent the debtors solely for the purpose of a court appearance. *See, e.g., In re Olson*, Case No. 15-01580-TLM, 2016 WL 3453341, at *5 (Bankr. D. Idaho June 16, 2016); *In re Dean*, Case No. 12-12576-B-7, 2013 WL 3306418, at *3 (Bankr. E.D. Cal. June 28, 2013); *In re Walker*, 332 B.R. 820, 831 (Bankr. D. Nev. 2005). While appearance counsel often appear at "routine" hearings in bankruptcy cases without adverse results, they typically are ill-

(continued...)

Appearance counsel did not specifically ask for a continuance of the hearing or a chance for the Grosses to amend their plan. And he did not argue that, as a factual matter, the trustee was wrong about the Grosses exceeding the debt limit for chapter 13 eligibility. Instead, counsel suggested that the regular counsel should be given the opportunity to brief the debt limit issue. The bankruptcy court indicated that it disagreed with the Grosses's legal theory regarding the debt limit.

The court then announced its ruling, as follows:

> All right. So at this stage we have a number of problems. We've had many confirmation hearings here. Given the debt limit issue and the fact that we still don't have a plan on file that I can go forward with, I'll give the Debtor's seven days to convert or the case will be dismissed.

Hr'g Tr. (July 26, 2018) at 3:4-9. The court made no other specific findings. Nor did the court immediately enter a written order memorializing its oral ruling from the hearing.

Instead of filing a request to convert the case to chapter 7, the Grosses timely filed a motion seeking to alter the judgment or for relief from judgment under Civil Rules 59 and 60 (made applicable in bankruptcy

---

[7](...continued)
prepared to address any issues that arise at the hearing requiring an understanding of the history of their clients or their bankruptcy case. *See, e.g.*, *In re Brown*, Case No. 6:16-BK-18361 MJ, 2017 WL 2869794, at *1 (Bankr. C.D. Cal. June 30, 2017); *In re Garner*, Case No. 10-20383-PB11, 2014 WL 5023224, at *2 (Bankr. S.D. Cal. Mar. 31, 2014).

cases, respectively, by Rules 9023 and 9024).[8] The Grosses principally argued that the bankruptcy court had denied them due process. They contended that they were not given an adequate or reasonable opportunity to address the trustee's objections, which were raised for the first time at the July 26, 2018 confirmation hearing.

Among other things, the Grosses pointed out that, during the 14 months their case had been pending, they had duly paid to the trustee each and every $2,500.00 monthly plan payment contemplated by their chapter 13 plan. They also claimed that, up to the time of the July 26, 2018 confirmation hearing, they had promptly responded to all issues and concerns raised by the court and the trustee. They additionally noted that, during the pendency of the case, they had avoided the Bank of New York Mellon's junior lien, had successfully objected to the IRS's secured proof of claim, and thereby had recast all but $2,500.00 of the IRS's claims as unsecured.

According to the Grosses, after their appearance counsel notified them of the court's ruling, they reviewed the case, corresponded with the trustee, and realized that the trustee's debt limit issue was factually unfounded. The trustee had erroneously calculated the total unsecured

---

[8] The Grosses did not specify which grounds for relief under Civil Rules 59 and 60 they particularly were relying on. Instead, they cited all of the grounds that typically and historically justify relief under these Rules.

debt to be roughly $474,000.00, when in fact the total unsecured debt actually was much less. The Grosses explained that their original Schedule E/F listed unsecured debt totaling $161,266.00. This amount of unsecured debt included the $130,000.00 claim owed to the IRS. Therefore, the Grosses reasoned, the trustee had double counted the IRS debt when she added an additional $133,156.71 on behalf of the IRS to the Grosses' total unsecured debt on account of their successful claim objection. After avoiding the second deed of trust against their residence, the trustee believed that the Grosses were required to add Bank of New York Mellon's $174,361.00 claim to their total unsecured debt.[9] But even if Bank of New York Mellon's claim is added to the $161,266.00 in unsecured debt previously listed in their Schedule E/F, the Grosses still only had a total of $335,627.00 of unsecured debt, an amount well below the $394,725.00 debt limit imposed by § 109(e).

The Grosses also noted that the trustee was simply wrong when she

---

[9] The Grosses did not directly dispute in the bankruptcy court whether the unsecured debts resulting from the valuations of the challenged secured claims should be included within the calculation of their unsecured debt to establish eligibility under § 109(e). On appeal they note that based on their prior chapter 7 discharges, the in personam liability discharged in that bankruptcy is not counted in the subsequent chapter 13 case for purposes of determining eligibility under § 109(e). *Free v. Malaier (In re Free)*, 542 B.R. 492, 497 (9th Cir. BAP 2015); *see also Washington v. Real Time Resolution, Inc. (In re Washington)*, No. CC-18-1206, 2019 WL 345052 (9th Cir. BAP July 30, 2019). Because the trustee acknowledges that the Grosses qualify for chapter 13 under § 109(e), we need not address this issue further.

claimed that their signatures were missing from their first amended plan. The trustee has conceded this point on appeal.

As for the missing 2017 tax return, the Grosses insisted they could quickly and easily address this new issue and any other lingering plan confirmation issues. With respect to the wrong hearing date and courtroom number, the Grosses indicated that these errors were clerical mistakes made by their counsel and that they should not suffer the harsh consequences of dismissal as a result of their counsel's inadvertent error. Along with their motion for relief, the Grosses contemporaneously filed a separate application asking the court to hear the motion for relief on an expedited basis.

On August 3, 2018, the court entered an order denying the motion for relief and dismissing the case. The order stated that the Grosses had not demonstrated cause for relief from the court's July 26, 2018 oral ruling. The order further stated that, based on the record in the entire case and the reasons set forth at the July 26, 2018 hearing, the case was dismissed and the Grosses' motion for relief and application for shortened-time consideration were both denied.

The Grosses timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Did the bankruptcy court abuse its discretion when it dismissed the Grosses' chapter 13 case?

2. Did the bankruptcy court abuse its discretion when it denied the Grosses' motion under Civil Rules 59 and 60?

**STANDARD OF REVIEW**

We review the bankruptcy court's chapter 13 case dismissal for an abuse of discretion. *Schlegel v. Billingslea (In re Schlegel)*, 526 B.R. 333, 338 (9th Cir. BAP 2015). We also review under the abuse of discretion standard the bankruptcy court's denial of motions under Civil Rule 59 and 60. *First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.)*, 439 F.3d 558, 561 (9th Cir. 2006).

A bankruptcy court abuses its discretion if it applies the wrong law or its factual findings are illogical, implausible, or without support in the record. *In re Schlegel*, 526 B.R. at 338 (citing *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011)).

**DISCUSSION**

Under § 1307(c), the bankruptcy court may dismiss a chapter 13 case for cause. The statute sets forth a non-exhaustive list of grounds that constitute "cause" for dismissal or conversion, whichever is in the best interests of the estate's creditors. *de la Salle v. U .S. Bank, N.A. (In re de la*

*Salle)*, 461 B.R. 593, 605 (9th Cir. BAP 2011).[10] The bankruptcy court's ruling did not specify which enumerated ground under § 1307(c) the court was relying on. Still, there are two enumerated grounds that arguably fit the facts of this case: §§ 1307(c)(1) and (c)(5). We may affirm on any ground supported by the record. *See Shanks v. Dressel*, 540 F.3d 1082, 1086 (9th Cir. 2008). Therefore, we will address each of these grounds in turn.

**A. Section 1307(c)(1)**.

"'A debtor's unjustified failure to expeditiously accomplish any task required either to propose or confirm a chapter 13 plan may constitute cause for dismissal under § 1307(c)(1).'" *In re de la Salle*, 461 B.R. at 605 (quoting *Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)*, 455 B.R. 904, 915 (9th Cir. BAP 2011)). In order to properly dismiss under § 1307(c)(1), the debtor's delay must be **both** unreasonable and prejudicial to creditors. *Id.* (citing § 1307(c)(1)).

The bankruptcy court obviously considered the Grosses' delay in confirming their plan to be unreasonable. As the bankruptcy court reasoned, it already had continued the confirmation hearing a number times, and there still was no confirmable plan on file. The court observed

---

[10] The bankruptcy court did not consider whether dismissal or conversion was in the best interests of creditors as required by the statute. *See Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (9th Cir. BAP 2006). Nonetheless, this was harmless error because we must reverse in any event. We must ignore harmless error. *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 355 (9th Cir. BAP 2012).

that the first amended plan suffered from several problems raised at the hearing. Most important of these was the chapter 13 eligibility problem after the successful challenges to the secured claims of Bank of New York Mellon and the IRS.

At the time of the Grosses' chapter 13 filing, a debtor with $394,725.00 or more in total unsecured debt was ineligible to be a chapter 13 debtor. *See* § 109(e). As the Grosses later explained in their motion for relief from judgment, the trustee erroneously concluded that the Grosses' unsecured debt exceeded this eligibility limit by inaccurately tallying up the Grosses' debts. The trustee mistakenly double counted the debt owed to the IRS. The trustee has conceded this point on appeal. The trustee also has conceded that she was mistaken about the missing signature of Mrs. Gross.

This left only the copy of the 2017 tax return and the noticing errors as a basis for the court's conclusion that the plan could not be confirmed at the last confirmation hearing. On this record, more is required to show that the delay associated with the noticing defects was "unreasonable" within the meaning of § 1307(c)(1). In the context of this statute, "unreasonable delay" is a term of art. Generally speaking, it should be viewed as a determination of ultimate fact encompassing an equitable assessment of all relevant circumstances, akin to the "excusable neglect" standard under Rule 9006(b)(1) and Civil Rule 60(b)(1), as articulated in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 391–96 (1993). Another

17

example would be the "bad faith" standard as applied in the chapter 13 dismissal context. *See In re Ellsworth*, 455 B.R. at 917-18 (citing *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1390–91 (9th Cir. 1982)).

We do not mean to suggest that the unreasonable delay inquiry always will require an exhaustive analysis of all of the circumstances surrounding a case. Often, it is apparent from the record that giving the chapter 13 debtors further leeway would be futile. They may demonstrate over time that they are unwilling or unable to propose a feasible chapter 13 plan, or they may fail to address plan defects pointed out by the court and the trustee at prior confirmation hearings. *See, e.g.*, *In re de la Salle*, 461 B.R. at 596-99, 605 (court gave debtors detailed instructions after denial of second amended plan but debtors did nothing); *see also Villalon v. Burchard (In re Villalon)*, BAP No. NC-14-1414-KiTaD, 2015 WL 3377854, at *1-3 (9th Cir. BAP May 22, 2015) (debtor unable to cure even a small fraction of her large delinquency in plan payments though court gave her repeated opportunities to do so); *Phillips v. Leavitt (In re Phillips)*, BAP No. NV-14-1359-JuKuD, 2015 WL 2180321, at *1-2 (9th Cir. BAP May 8, 2015) (debtor unable to propose a feasible plan over seven attempts).

Alternately, we also have upheld findings of unreasonable delay when associated with bad faith – such as an apparent disregard by the debtors of the need to promptly and accurately discharge their chapter 13 duties. These cases often involve debtors who filed their chapter 13

18

petitions not with the legitimate intent to pay back their creditors, but rather with the intent of obstructing one or more of their creditors from enforcing their debts. *See, e.g., In re de la Salle*, 461 B.R. at 606 (debtors enjoyed the protection of the automatic stay, made zero payments to their secured creditor, and refused to propose a plan providing for its claim, instead focusing on their spurious noteholder standing litigation); *In re Ellsworth*, 455 B.R. at 920 (numerous indica of bad faith, including suspicious timing of petition filing and apparent intent of debtor to defeat collection of a single disputed judgment debt)*; see also Beckner v. Rojas (In re Beckner)*, BAP No. CC–16–1142–TaLN, 2017 WL 460967, at *1-4 (9th Cir. BAP Feb. 2, 2017) (debtor focused exclusively on her dispute with her secured creditors and ignored her duty to propose a confirmable chapter 13 plan providing for them); *Burris v. Curry (In re Burris)*, BAP No. CC–14–1552–TaKuD, 2015 WL 5922036, at *1-2 (9th Cir. BAP Oct. 9, 2015) (same).

In addition to futility or bad faith, our decisions upholding dismissals under § 1307(c)(1) also often reflect a debtor's defiance of the court's orders and directives and the dictates of chapter 13 of the Code. *See, e.g., In re de la Salle*, 461 B.R. at 605 ("Given the passage of time and debtors' repeated failure to provide for the claim secured by their residence in their plan, the bankruptcy court correctly concluded that conversion of debtors' case was warranted on account of the resultant delay and prejudice."); *In re*

19

*Ellsworth*, 455 B.R. at 915 ("the Ellsworths did not take seriously the court's admonitions regarding the need for their numbers to be accurate.").

This is not to say that § 1307(c)(1) dismissals and conversions always require proof of futility, bad faith, or defiance of the bankruptcy court, the Code, or the Rules. We are saying only that when one or more of these factors is evident in the chapter 13 debtors' conduct, the bankruptcy court need not conduct an exhaustive analysis of all of the relevant circumstances.

Notably, the bankruptcy court here made no findings that any of these critical factors were present. Nor is there anything in the record indicating futility, bad faith, or defiance. To the contrary, we are confronted here with a debtor whose plan at the time of the last confirmation hearing suffered from only two known and valid flaws: defective notice and a missing copy of their most recent tax return.[11] There is nothing in the

---

[11] It would violate the Grosses' due process rights to consider the alleged eligibility problem and the alleged signature problem without any notice. The trustee raised these problems for the first time at the last confirmation hearing. In the Grosses' motion under Civil Rules 59 and 60, once they were given a reasonable opportunity to understand the trustee's calculations and consider the alleged problems, they were able to establish definitively that neither of these problems actually existed. The trustee has admitted on appeal that she was mistaken about these problems, and yet the court relied on them, in large part, in dismissing the Grosses' chapter 13 case. In its order denying the Grosses' motion for relief from judgment, the court did not explain why the inaccuracy of the trustee's assertions was unimportant. Under these circumstances, the alleged eligibility and signature problems do not fairly support the bankruptcy court's decision to dismiss the Grosses' bankruptcy case.

record to suggest that the defective notice or the missing copy of the tax return were the result of bad faith or some act of defiance. And there is no serious dispute that the Grosses could have quickly remedied these problems. On this record, it was error to rely on these problems to dismiss.

Contrary to the bankruptcy court's determination, the record indicates that the Grosses were serious about confirming their chapter 13 plan and delivering a significant dividend to their unsecured creditors. Above all, they had paid to the trustee $2,500.00 per month for each of the fourteen months their plan was pending. Additionally, they promptly identified challenges to the secured claims of both Bank of New York Mellon and the IRS and moved to recast those debts as unsecured claims. Such activity often delays confirmation of a chapter 13 plan but is not "unreasonable delay"absent other circumstances not identified in this case.

In sum, there is no finding, and no evidence, of futility, bad faith or defiance of the bankruptcy court, the Code, or the Rules that would support the bankruptcy court's implicit determination of unreasonable delay. Furthermore, as a whole, the Grosses appeared dedicated to their good faith rehabilitation efforts. While there is evidence of delay, there is nothing in the record demonstrating that they caused the delay or that their conduct was unreasonable within the meaning of § 1307(c)(1).

In any event, even if we were to accept that the unreasonableness element for § 1307(c)(1) was met, the bankruptcy court made no finding of

21

delay prejudicial to the Grosses' creditors. Nor is there anything in the facts of this case demonstrating such prejudice. The noticing defect the bankruptcy court relied on in dismissing the case easily and quickly could have been rectified if the debtors had been given the opportunity to re-notice the confirmation hearing. Furthermore, during the entirety of the case, no creditors had expressed any interest in challenging confirmation of the Grosses' plan. Nor was there any legitimate reason to think creditors would have done so if the first amended plan were re-noticed for hearing. Indeed, for the vast majority of creditors, the first amended plan did not treat them much differently than they were treated under the original plan.

We understand that, at the time of the final confirmation hearing, the court was frustrated with the pace of the Grosses' progress towards confirmation. At bottom, however, the interest of the Grosses' creditors in the reasonable prospect of partial repayment is paramount. The Code and § 1307(c)(1) recognize the primacy of this interest, which is embodied in the statutory provisions governing chapter 13. And, here, the record indicates that the creditor goal of repayment was well within reach.

Given what devolves into minor procedural mistakes, it is hard to fathom how dismissal was not dramatically more prejudicial to unsecured creditors than an additional continuance. Under these circumstances, the bankruptcy court's decision to dismiss the Grosses' bankruptcy case cannot be justified under § 1307(c)(1).

**B. Section 1307(c)(5).**

Under § 1307(c)(5), a chapter 13 case may be dismissed or converted when confirmation of the plan is denied under § 1325 **and** the court also denies a request for additional time to file another plan or a plan modification. *In re Ellsworth*, 455 B.R. at 917 (citing *In re Nelson*, 343 B.R. at 676 & n.9) (emphasis added). To apply this provision, both types of denial typically are required (*i.e.*, both denial of plan confirmation and denial of a request for an opportunity to file another plan). *Id.*

*In re Nelson* described the purpose underlying the second of these requirements:

> The policy underlying the second element of § 1307(c)(5) relating to a request for time to try again is that chapter 13 plan confirmation is an iterative process. A debtor who wishes to submit to the rigors of living for a number of years in the straightjacket of a plan that represents one's "best efforts" to pay creditors should, in principle, be permitted the latitude to correct perceived deficiencies in proposed plans.

*In re Nelson*, 343 B.R. at 676. *Nelson*'s observation as to the iterative process is even more relevant where, as here, the debtors have a significant track record of making substantial plan payments.

Thus, the bankruptcy court could not have properly applied § 1307(c)(5) unless debtor was given a reasonable opportunity to correct or explain the trustee's perceived deficiencies. The bankruptcy court gave the Grosses no such opportunity. The court simply noted the deficiencies,

noted the numerous times the confirmation hearing had been continued and concluded that dismissal of the case was appropriate, arguably sua sponte. When the Grosses, in their reconsideration motion, attempted to bring to the attention of the bankruptcy court why the trustee was wrong regarding their chapter 13 eligibility and regarding the missing signature, the court denied the motion without any explanation – other than to say that the Grosses had not established cause for reconsideration.

Under these circumstances, § 1307(c)(5) does not support the court's decision to dismiss. *See id.*; *see also Penland v. Rakozy (In re Penland)*, BAP No. ID-05-1467-HKMa, 2006 WL 6811002 at *4-5 (9th Cir. BAP Aug. 17, 2006) (citing *In re Nelson* and holding that chapter 13 debtors typically must be given an additional chance to confirm a chapter 13 plan after denial of plan confirmation before the bankruptcy court can invoke § 1307(c)(5) as a ground for dismissal). The Grosses were not given a meaningful opportunity to address the points raised for the first time by the trustee at the last confirmation hearing, so we cannot uphold the bankruptcy court's decision to dismiss the Grosses' bankruptcy case under § 1307(c)(5).

## C. Unenumerated "Cause" For Dismissal.

While the bankruptcy court could have, in theory, fashioned its own cause for dismissal, it presumably would have articulated the specifics of that cause to make clear its intent. *See generally* Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 334.1, at ¶ [1] (2004)

24

(collecting cases). It did not. We are reluctant to consider whether the court meant to fashion its own cause for dismissal in the absence of some clear signal from the bankruptcy court.

Even so, there are no findings or evidence here that would support a finding of unenumerated cause for dismissal. This is particularly true here, where the court appears to have primarily relied on an incorrect calculation of the Grosses' unsecured debt and relatively minor procedural defects, of which the Grosses were not given prior notice. The court apparently was frustrated with the amount of time it was taking the Grosses to confirm a chapter 13 plan. But Congress made clear that delay only constitutes cause for dismissal when it is both unreasonable within the meaning of § 1307(c)(1) and prejudicial to creditors.

Whatever powers the bankruptcy court had to fashion its own cause for dismissal, that power doubtlessly did not give the court authority to dismiss for a type of delay different than that contemplated by Congress in chapter 13 of the Code. Bankruptcy judges must work within the confines of the Code and may not exercise their general and equitable powers in a manner inconsistent with the Code's express provisions. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 382 (2007) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)).

Accordingly, we cannot uphold the bankruptcy court's decision to dismiss the Grosses' bankruptcy case based on some unenumerated  theory

of "cause" for dismissal. In light of the fact that none of § 1307(c)'s enumerated grounds applied here, and given the absence of a valid unenumerated theory of cause to dismiss, we cannot uphold the bankruptcy court's dismissal of the Grosses' chapter 13 case.[12]

## CONCLUSION

For the reasons set forth above, we REVERSE the bankruptcy court's dismissal of the Grosses' chapter 13 case.

---

[12] Because we have concluded that the bankruptcy court's dismissal order must be reversed, we decline to consider its order denying the Grosses' motion under Civil Rules 59 and 60.